NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

ST. MARYS FOUNDRY COMPANY
and St. Marys Foundry, Inc.,
Respondents,

United Electrical, Radio & Machine
Workers of America (UE) and its
Local No. 763, Intervenors.

No. 87–5922.

United States Court of Appeals,
Sixth Circuit.

Argued June 14, 1988.

Decided Nov. 3, 1988.

Aileen A. Armstrong, Deputy Associate Gen. Counsel, N.L.R.B., Steven Goldstein (argued), Barbara A. Atkin, Washington, D.C., for N.L.R.B.

Thomas M. Carolin, Lawrence R. Fisher, Seeley, Savidge and Aussen, Cleveland, Ohio, for St. Marys Foundry Co.

Robert J. Brown (argued), Dayton, Ohio, for St. Marys Foundry, Inc.

Leroy L. Hodge, Pittsburgh, Pa., for United Elec., Radio & Machine Workers of America.

Before MILBURN, GUY and NORRIS, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

The National Labor Relations Board applies for enforcement of its order requiring St. Marys Foundry Company ("St. Marys") to cease and desist from certain unfair labor practices, and to bargain upon request with the United Electrical, Radio & Machine Workers of America and its Local 763 ("the union"), arbitrate certain grievances, pay back wages to certain foundry employees, provide information to the union, and take other appropriate actions. The Board held that St. Marys violated sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (5), by failing to bargain with the union about the effects on employees of the closing of its foundry, by failing to give the union necessary and relevant information about the sale of the company, and by refusing to arbitrate grievances as provided for by the collective bargaining agreement. The Board also found that St. Marys Foundry, Inc. ("SMF") was a successor employer to St. Marys under the analysis employed by the Supreme Court in *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973), and imposed successor liability on SMF for the payment of back wages to the employees.

St. Marys and SMF argue that the Board's finding that St. Marys violated the Act by refusing to bargain with the union about the effects of the closing is not supported by substantial evidence. They do not contest the finding of other violations by the Board. However, SMF contends that it is not a successor employer to St. Marys and should not be jointly and severally liable with St. Marys for the payment of back wages.

We conclude that there was substantial evidence to support the Board's finding that St. Marys violated the Act by refusing to bargain about the effects of the closing, and that SMF was a successor employer to St. Marys. We also conclude that the Board did not abuse its discretion in fashioning a remedy for the unfair labor practices. We write only in an attempt to clarify the conditions under which successor liability may be imposed.

As we recently pointed out in *NLRB v. South Harlan Coal, Inc.*, 844 F.2d 380, 382 (6th Cir.1988), "[a]n employer will be jointly and severally liable for the unfair labor practices of its predecessor when (1) there exists substantial continuity of business operation between the predecessor and successor corporations; and (2) the successor had knowledge of the unfair labor practices

of its predecessor prior to the date of purchase." A high degree of deference is accorded a finding by the Board that an employer is liable as a successor employer, since the Board has special expertise in determining this issue. *Id.* at 383. Successor employer status is a finding of fact which is conclusive under § 10(e) of the Act, 29 U.S.C. § 160(e), "if supported by substantial evidence on the record considered as a whole." Moreover, the court may not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951).

Larry Dine was president, plant manager and a member of the board of directors of St. Marys, and was in charge of daily operations of the plant. Dine also advised Larry Fischer, the vice-president ultimately responsible for the plant's operations, on interpretation of the collective bargaining agreement. Production and maintenance workers at the foundry were, and had been for many years, represented by the union. After a few years of declining sales and profits caused by a recession in the machine tool and oil industries, St. Marys ceased operations in late December 1983.

In early 1983, Dine had expressed an interest in purchasing the foundry, but was unable to obtain satisfactory financing. On December 22, 1983, Dine incorporated St. Marys Acquisition Corporation, which became SMF, the eventual purchaser of St. Marys. Dine was notified by Fischer on December 23 to cease operations at the foundry and terminate the employees. Dine met with union representatives and subsequently with all employees to inform them that the foundry would be closed that day. The Board did not find that the union requested bargaining at that point. However, at a meeting on December 28 between Fischer and union representatives, the union requested that the company bargain about the effects of the closing. In a credibility resolution of conflicting testimony, the Board found that Dine attended the December 28 meeting where testimony indicated that both oral and written requests were made by the union to bargain about the effects of the closing on employees. Fischer refused to bargain, contending that it was not necessary. Although Fischer expressed a willingness to bargain in subsequent contacts with the union, no bargaining ever took place. The union responded by filing an unfair labor practice charge against St. Marys on February 15, 1984.

Also, on December 28, Fischer and Dine met separately and signed an asset purchase agreement on behalf of St. Marys and SMF, respectively. The sale was not formally consummated until February 3, 1984. SMF reopened the foundry on February 6, 1984, performed the same work as St. Marys at the same location, used the same equipment and technology, and employed many of the same people. Dine and other key management personnel continued with SMF in substantially unchanged positions.

Although it operated the foundry in basically unchanged form, SMF nevertheless maintains it should not be held liable as a successor employer. Noting that the formal charges against St. Marys were not filed by the union until after the sale of the foundry, SMF contends it cannot be charged with knowledge of St. Marys' unfair labor practices. It relies upon the Supreme Court's opinion in *Golden State,* which it says rules out imposition of successor liability unless unfair labor practice charges were pending before the successor undertook the operation of the business. In the absence of such charges, SMF argues, holding it liable as a successor employer imposes an unfair hardship since it could not protect itself from an unknown risk by negotiating an indemnity agreement or lower price.

In *Golden State,* the Supreme Court concluded that there was substantial evidence that the successor employer knew of an outstanding Board order, resulting from a finding of unfair labor practices, directing the predecessor to reinstate an employee with back pay, and that there was substantial continuity in the operation of the busi-

ness. The issue was not raised, and therefore the Court did not pass upon, whether knowledge of unfair labor practices of a predecessor, absent an outstanding formal charge, would be sufficient to hold a successor employer liable. However, the public policy reasons underlying the decision in *Golden State* would seem to apply under these circumstances:

When a new employer ... has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations, those employees who have been retained will understandably view their job situations as essentially unaltered. Under these circumstances, the employees may well perceive the successor's failure to remedy the predecessor employer's unfair labor practices arising out of an unlawful discharge as a continuation of the predecessor's labor policies. To the extent that the employees' legitimate expectation is that the unfair labor practices will be remedied, a successor's failure to do so may result in labor unrest.... Similarly, if the employees identify the new employer's labor policies with those of the predecessor but do not take collective action, the successor may benefit from the unfair labor practices....

*Golden State*, 414 U.S. at 184, 94 S.Ct. at 425.

In *South Harlan Coal*, this court held an employer was liable as a successor because the business continued in substantially unchanged form, and there was evidence from which the Board could infer that the successor had knowledge of the predecessor's unfair labor practices. Although in *South Harlan Coal* formal unfair labor practice charges were filed by the union before the successor employer purchased the business, that fact does not appear to have been crucial to the court's finding of successor liability, as the opinion points to evidence of the successor's knowledge of picketing against alleged unfair practices, as well as to evidence of knowledge the charges had been filed.

When a successor employer knows that his predecessor is alleged to have engaged in unfair labor practices, he undertakes the business with notice of the risk that those allegations may ripen into findings of unfair labor practices which will have to be remedied, and that he may be held liable for the remedy, just as surely as if he purchased with knowledge that formal charges had been filed. In either situation, a prudent buyer would provide for the risk in the course of his negotiations with the seller. It is no more certain that the filing of formal charges of unfair labor practices will ripen into a finding of a violation of the Act, and an imposed remedy, than that the conduct complained of will lead to the filing of charges culminating in the same result. The predecessor's conduct is the same in either situation; notice of the facts and appreciation of the significance of the predecessor's conduct are the determining factors.

Of course, in this context, knowledge of the allegations or conduct contemplates an appreciation by the successor that the conduct could amount to an unfair labor practice in violation of the Act, just as knowledge of a filed charge provides notice of such a risk. To adopt a bright-line test by holding that a successor employer is liable only in the event charges have been filed, would not serve the remedial purposes of the Act. If pre-charge notice provides the same quality of information, there is no reason not to bind the successor.

Here, not only was Dine personally involved in negotiations to purchase the predecessor, and president of both the predecessor and successor companies, he also was found to be present at the meeting at which the predecessor refused to engage in effects bargaining after the union's demands. In addition, the Board found that the predecessor depended on Dine to interpret the collective bargaining agreement and St. Marys' duties thereunder. Dine possessed the sophistication to comprehend that failure to engage in bargaining might result in a finding of unfair labor practices, and he could appreciate the risk involved to the successor employer. Imposition of successor liability does not

work an unfair hardship in situations where the successor had knowledge that the predecessor was engaging in conduct which could lead to a finding of an unfair labor practice, and could have covered the risk in its bargain for purchase of the business.

Accordingly, the Board's finding that St. Marys violated §§ 8(a)(1) and (5) of the Act, and that SMF was a successor employer of St. Marys, is **affirmed,** and the Board's order imposing successor liability on SMF will be enforced.